IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION


FELICIA OWENS DIXON,                    )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )        CIVIL ACTION NO. 2:09-00684-KD-N
                                        )
CITY OF SELMA, et al.,                  )
                                        )
            Defendants.                 )


## REPORT AND RECOMMENDATION

This action is before the Court on a motion for summary judgment (doc. 33) filed

by the defendants, City of Selma, Jeffery Hardy, Beauty Benjamin, Ray Blanks, Willie

Billingsley, Frederick Walker and Scott Swanson. The matter has been referred to the

undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) for entry of a report and

recommendation. Upon consideration of the defendants' motion, plaintiffs' response in

opposition thereto (doc. 39), defendants' reply (doc. 40), and all other pertinent portions

of the record, it is recommended that defendants' motion for summary judgment be

GRANTED.

    I.      Procedural Background.

    On September 15, 2009, plaintiff, Felicia Owens Dixon, filed a Complaint in the

Circuit Court of Dallas County, Alabama, against the City of Selma, six individual Selma

police officers, and Tanya Miles, alleging a cause of action pursuant to 42 U.S.C. §1983.[1]

Specifically, plaintiff alleges that she was arrested on August 26, 2008, and that the actions of the defendants were "in violation of her rights under the Fourth Amendment of the United States Constitution to be free from unreasonable arrest and her right under the Fourteenth Amendment of the United States Constitution to due process of law" (doc. 1-1 at ¶ 9). The action was timely removed to this Court by the defendants on October 16, 2009 (doc. 1).

On December 18, 2009, defendant Tanya Miles, who was identified by the remaining defendants as an individual who called the police to report the actions of the Plaintiff, filed a motion to dismiss (doc. 12). Plaintiff advised the Court on February 11, 2010 (doc. 18) that she had no objection to the dismissal of Ms. Miles. On February 24, 2010 a Report and Recommendation (doc. 20) was entered recommending that Miles' motion to dismiss be granted. The recommendation was adopted and the complaint against Miles was dismissed on March 16, 2010 (doc. 25).

The present motion for summary judgment was filed on August 2, 2010 (doc. 33) by the City of Selma and six of its police officers: Jeffery Hardy, Beauty Benjamin, Ray Blanks, Willie Billingsley, Frederick Walker and Scott Swanson. Plaintiff has now responded to the motion (doc. 39) and movants have replied (doc. 40). The motion is now ripe for the court's consideration.

II.    Findings of Fact

---

[1] The complaint alleges, in part, that it is "brought under 42 U.S.C. §1983 for violation of the plaintiff's civil rights and under color of state law and Article I, § 6,7 of the Constitution of Alabama 1901." (Doc. 1-1 at ¶ 9)

Upon review of all the evidence of record, both documentary and testimonial, the following relevant facts are either undisputed or uncontradicted by the plaintiff: [2]

1.      "On August 26, 2008, the day of the mayoral election in the City of Selma, the Selma Police Department received several calls and complaints regarding a van with an attached trailer carrying a sofa, driving around town." (Doc. 33,  Exhibit 3, Affidavit of Ray Blanks ; Doc. 33, Exhibit 4, Affidavit of FrederickWalker ).  Eyewitnesses reported that the occupants of the van "were brandishing weapons and yelling disparaging, profane remarks about mayoral candidates." *Id*.  The witnesses also reported that the van was occupied by the plaintiff, Felicia Owens Dixon, and her husband, Louis Dixon, a mayoral candidate for the City of Selma. *Id.*

2.      According to the plaintiff, she and her husband "were actively campaigning against then incumbent Mayor Perkins while driving around the City of Selma." (Doc. 39 at 2)  This campaigning began after plaintiff and her husband dropped their daughter off at school around 7:00 a.m. on August 26, 2008.   Plaintiff's Deposition (Doc. 33-5) at p. 28, ll. 2-7.   A heavy duty utility trailer was attached to the van which was "as long as the van" and was equipped with "[a] couch, a chair, a cooler with drinks, [and] a bullhorn." *Id*. at p. 29, ll. 7-14.  Plaintiff testified that she picked up her daughter from school that afternoon at 3:00 p.m. and "went back to campaigning." *Id*. at p. 28, ll. 14,19.

3.      At 7:48 p.m. on August 26, 2008, the Selma Police Department received a dispatch call "of disorderly conduct and shots fired in front of or near Carter's Drug Store

_____

[2] As it is required to do on defendants' motion for summary judgment, the court has construed all facts in the light most favorable to the plaintiff.

in downtown Selma." (Doc. 33 at 2 and Exh. 1; Doc. 39 at 1 and Exh. G) Eye witnesses identified the vehicle from which the shots were fired as a van with an attached trailer and the occupants of the van as Louis Dixon and Felicia Dixon, the plaintiff. (Doc. 33, Exhibits 3, 4) Both Louis Dixon and Felicia Dixon were also positively identified by the eyewitnesses as the people brandishing the weapons. *Id.*

4.     Plaintiff denies that "she and those with her were brandishing weapons and shouting obscenities" and that the weapons in her possession at the time were ever "fired or shot during the course of that day." (Doc. 39 at 2) However, plaintiff does not argue that the Selma Police Department *never* received a phone call about shots being fired, nor does she proffer any evidence to refute that the Selma Police Department received such a call. Further, plaintiff does not contest the eyewitness report identifying plaintiff's van as the vehicle containing the shooters and plaintiff and her husband as the only occupants of that van and the people who were brandishing the weapons.

5.     Defendant Frederick Walker was in the process of responding to one call for disorderly conduct in front of Carter's Drug Store when a second call was received that shots were fired. (Doc. 33, Exhibit 4 at 2) After talking with the eyewitnesses, Officer Walker pursued and stopped plaintiff's van at the intersection of Washington Street and Selma Avenue and instructed the occupants to exit the vehicle. *Id.* At the time of this stop, the vehicle was occupied by the plaintiff's husband, who was the driver, and four passengers: the plaintiff, William Hopkins, Claude Hester and plaintiff's five year old daughter. *Id.* at 2-3. According to the plaintiff, "Officer, SRSmith, was the first at the scene at 19:51:16 (7:51:16 p.m.), along with at least seven other officers converging on the corner of Washington and Selma [and] [a]ll subjects were detained at

19:54:49 (7:54:49 p.m.)."   (Doc. 39 at 1, *citing* Exh. H (Doc. 39-8) and Exh. I (Doc. 39-9).

6.      It is undisputed that, when the officers checked the vehicle for weapons that might have discharged the reported shots, a handgun was in plain sight on the driver's side of the van within arm's reach. (Doc. 33, Exhibit 4 at 2)   Additionally, a semi-automatic rifle and shotgun were in plain view in the back seat[3] and another handgun was found under the sofa on the attached trailer.[4] *Id.*

7.      During the search for the weapons, plaintiff's five year old daughter was discovered in the back of the van.  *Id.*   Plaintiff testified that her daughter was in the very back of the van, a full seat located behind the two middle bucket seats in which Mr. Hopkins and Mr. Hester were seated.  Plaintiff's Deposition (Doc. 39-12) at p. 38, ll. 21-22 and p. 39, ll. 2-13.  According to the plaintiff, the rifle and shotgun were located "next to where Mr. Hester was seated" and, therefore, just in front of where plaintiff's daughter was discovered.  *Id*. at p. 39, ll. 2-13 and p. 59, ll. 3-9.

8.      The adult occupants of the van, namely plaintiff and her husband as well as Mr. Hopkins and Mr. Hester, were arrested and charged with carrying a firearm without a permit, in violation of Ala. Code §13A-11-73.   (Doc. 33 at 3 and Exh. 1; Doc. 39 at 2)

---

[3] Plaintiff testified that the rifle and shotgun were "located next to where Mr. Hester was sitting" and were covered with "a throw cover."  Plaintiff's Deposition (Doc. 39-12) at p. 59, ll. 3-9.

[4] Plaintiff denied knowing that one of her two handguns was found in the sofa on the back of the trailer and stated that she had "no idea how it got there." Plaintiff's Deposition (Doc. 39-12) at p. 58, ll. 18-23.

9.      Plaintiff contends that she "had a valid pistol permit and informed Officer Blanks, after she was told why they had arrested her."  (Doc. 39 at 2), *citing*  Plaintiff's Deposition (Doc. 39-12) at  p. 50, ll. 1-23.   However, plaintiff testified at her deposition that this conversation with Officer Blanks occurred *after* she had been "back in the cell two hours and then they brought me out."  Plaintiff's Deposition (Doc. 39-12) at  p. 49, ll. 18-19.   The two hour incarceration before this conversation with Officer Blanks was in the Selma City Jail prior to plaintiff's transfer to the Dallas County Jail. *Id.* at pp. 49-51. Plaintiff does not dispute defendant's contention that "[a]t the scene, none of the detained subjects, including the Plaintiff, stated that they had a valid permit to carry the handguns or presented a valid permit for the handguns."  (Doc. 33, Exhibits 3 and 4) [5]

10.      Plaintiff and her husband were also charged with endangering the welfare of a child, in violation of Ala. Code § 13A-13-6.  *Id*.   Plaintiff was released from the Dallas County Jail on bail the following day, August 27, 2008.  (Doc. 39 at 2; Exhibit K (Doc. 39-14).

11.      In her criminal case, plaintiff filed a motion to dismiss which was ultimately granted by the Municipal Court of Selma, Alabama, when the prosecutor failed to respond to the motion as directed by the court.  (Doc. 33 at 3 and Exhibit 2; Doc. 39 at 2)  Plaintiff filed this action on September 15, 2009, in the Circuit Court of Dallas County, Alabama; the case was removed to this Court on October 16, 2009 (doc. 1).

---

[5] Officer Blanks and Officer Walker both testified that "[a]t the scene, the detainees were asked if they had permits to carry the handguns and none of the subjects stated that they did have a valid permit."  (Docs. 33-3 and 33-4 at 2)

12.    Although plaintiff has named six individual Selma police officers as defendants, she concedes that Officer Beauty Benjamin, Officer Willie Billingsley and Officer Scott Swanson "had nothing or very little to do with the arrest and detainment [of the plaintiff]."  (Doc. 39 at 3; Plaintiff's Deposition (Docs. 33-5 and 39-12 at pp. 67–78)

III.    Summary Judgment Standard.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  Summary judgment should be granted when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." *See* McDowell v. Brown, 392 F.3d 1283, 1288 (11th Cir. 2004) (*citing* Nolen v. Boca Raton Community. Hosp., Inc., 373 F.3d 1151, 1154 (11th Cir. 2004) (*citing* Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

All issues of material fact are first resolved in favor of the plaintiff, followed by a determination of whether the defendant is entitled to judgment as a matter of law under that version of the facts.  McDowell, 392 F.3d at 1288 (*citing* Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003).  There exists no genuine issue of material fact, and summary judgment is due to be granted, when "the evidence could not lead a rational fact-finder to find for the nonmoving party, and where the nonmoving party fails to make a sufficient showing to demonstrate an element essential to that party's case, on which that party bears the burden of proof at trial."  McDowell, 392 F.3d at 1288-89 (*citing* Celetex Corp. v. Catrett, 477 U.S. at 322-23; and Holbrook v. City of Alpharetta, 112 F.3d 1522, 1525-26 (11th Cir. 1997).  "[G]enuine disputes are 'those in which the evidence is such that a reasonable jury could return a verdict for the non-movant [and]

[f]or factual issues to be considered genuine, they must have a real basis in the record'."

McDowell, 392 F.3d at 1289 (*quoting* Mize v. Jefferson City Bd. of Educ., 93 F.3d 739,

742 (11th Cir. 1996). In addition, plaintiff must "go beyond the pleadings and by [her]

own affidavits, or by the depositions, answers to interrogatories, and admissions on file,"

establish that genuine issues of material fact exist to be resolved at trial, because plaintiff

bears the burden of proof at trial. Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324; Freeman

v. Town of Eatonville, Fla., 2006 WL 3078928, *2 (11th Cir., November 1, 2006).

      With specific respect to the resolution of a summary judgment motion based on

qualified immunity, the Eleventh Circuit has declared:

> [W]e approach the facts from the plaintiff's perspective because "[t]he
> issues appealed here concern not which facts the parties might be able to
> prove, but, rather, whether or not certain given facts showed a violation of
> clearly established law." Sheth v. Webster, 145 F.3d 1231, 1236 (11th
> Cir.1998). As this Court has repeatedly stressed, the "facts, as accepted at
> the summary judgment stage of the proceedings, may not be the actual facts
> of the case". Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3
> (11th Cir.2000). Nevertheless, for summary judgment purposes, our
> analysis must begin with a description of the facts in the light most
> favorable to the plaintiff. *See* Skrtich v. Thornton, 280 F.3d 1295, 1299
> (11th Cir.2002).

McCullough v. Antolini, 559 F.3d 1201, 1202 (11th Cir. 2009).

IV.   Analysis.

    (A)   *The individual defendant police officers are entitled to qualified
immunity.*

      "Public officials are entitled to qualified immunity so long as their discretionary

actions do not violate clearly established statutory or constitutional rights." Autery v.

Davis, 2009 WL 3792403, * 2 (11th Cir. Nov. 12, 2009). Under Saucier v. Katz, 533 U.S.

194 (2001) , the "threshold question" to be determined before any other inquiry is:

"Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 533 U.S. at 201. Only if the answer to that question was affirmative, may the court proceed to determine "whether the right was clearly established ... in light of the specific context of the case, not as a broad general proposition." *Id.* The two-part inquiry established in <u>Saucier</u> is, however, no longer mandatory. <u>Pearson v. Callahan</u>, ---- U.S. ----, 129 S.Ct. 808, 818 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

"Qualified immunity is a privilege that provides 'an immunity from suit rather than a mere defense to liability'." <u>Townsend v. Jefferson County</u>, 582 F.3d 1252, 1258 (2009); *see also* <u>McCullough</u>, *supra*, 599 F.3d at 1205 ("Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known."); <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1346 (11th Cir. 2002)(same).

The defense of qualified immunity is predicated on a showing by the defendant police officer that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotations omitted). Plaintiff's contention that there exists a material question

of fact regarding whether the defendant police officers were acting within the scope of there discretionary authority is without merit.[6]

     "To determine whether an official was engaged in a discretionary function, [courts] consider whether the acts the official undertook are of a type that fell within the employee's job responsibilities." Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004). *See also* Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004)("Our inquiry is two-fold. We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize. . . [and] we look to the general nature of the defendant's actions. . .").

     There is ample evidence in the record before the court that the officers' decision whether or not to detain/arrest the plaintiff was an action taken pursuant to their discretionary authority. It is undisputed that the officers were on duty and "were acting within the purview of their authority" when they performed the traffic stop and arrested the plaintiff. There is no question that the acts of the defendant officers "fell within the [police officers'] job responsibilities." Crosby, *supra*. The officers performed the duties of their jobs in that they responded to a call regarding suspects brandishing weapons and firing weapons; performed a traffic stop and pulled over the vehicle identified by

---

[6] Plaintiff specifically argues that a disputed fact exists as to "whether said officers were acting within the purview of their authority when they stopped the vehicle in which Plaintiff and her companions were riding and placed them under arrest and held them without informing them they were under arrest." (Doc. 39 at 10) Plaintiff also argues that "a reasonable officer could not objectively find that he was acting within the scope of his authority where there was no probable cause for an arrest and without developing an investigatory strategy based upon reasonable suspicion." *Id.*

eyewitnesses as carrying the suspects who allegedly fired the shots; detained the suspects and performed a plain view search which resulted in the discovery of two handguns, a rifle, a shotgun and a five-year old child;  and, based upon eyewitness reports and their own observations, placed the plaintiff and other occupants of the vehicle under arrest. Accordingly, the court finds that the officers were exercising their discretionary authority at the time of the incident made the basis of plaintiff's complaint.

Because the defendant police officers established that they were acting within their discretionary authority, the burden then shifts to the plaintiff to show that it would be inappropriate for the police officers to receive qualified immunity in this case. Lee, 284 F.3d at 1194.[7]  To meet her burden, plaintiff must first show that, "[t]aken in the light most favorable to the party asserting the injury, [] the facts alleged show the officer's conduct violated a constitutional right." Id., *quoting*  Saucier, 533 U.S. at  201.  "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id.  The second step of the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202

---

[7] "Courts utilize a two-part framework to evaluate qualified immunity claims. One inquiry in a qualified immunity analysis is whether the plaintiff's allegations, if true, establish a constitutional violation. If the facts, construed as they must be in this summary judgment appeal in the light most favorable to the plaintiff, show that a constitutional right has been violated, another inquiry is whether the right violated was 'clearly established.'  Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case." Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir. 2010) (internal citations omitted)

*citing* Wilson v. Layne, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)

("[A]s we explained in Anderson, the right allegedly violated must be defined at the

appropriate level of specificity before a court can determine if it was clearly

established").  "This is not to say that an official action is protected by qualified

immunity unless the very action in question has previously been held unlawful, but it is to

say that in the light of pre-existing law the unlawfulness must be apparent." Hope v.

Pelzer, 536 U.S. 730, 739  (2002) (internal quotations and citations omitted).  In other

words, plaintiff must show that the defendant police officer had "fair warning" that his

alleged conduct was unconstitutional.  *Id.* at 741; *see also* Pearson, *supra*, 129 S.Ct. at

818-21 (The process for establishing a qualified immunity defense can be tailored to the

details of a particular case.).

     Under the Fourth Amendment, an individual has a right to be free from

"unreasonable" searches and seizures and an arrest of a person constitutes a seizure of

that person.  Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007).  Whether a

seizure by an arrest was "reasonable" under the Constitution turns on a finding of

probable cause, Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th  Cir. 2004), a

determination made under the totality of the circumstances, Rankin v. Evans, 133 F.3d

1425, 1435 (11th Cir. l998).  Probable cause to arrest for the commission of a crime may

be found when the "law enforcement officials have facts and circumstances within their

knowledge sufficient to warrant a reasonable belief that the suspect had committed or

was committing a crime." Id., *citing*, United States v. Gonzalez, 969 F.2d 999, 1002 (11th

Cir. 1992).  A warrantless arrest without probable cause violates the Constitution.  Id.,

*citing* Kingsland, 382 F.3d at 1226; Jones v. Cannon, 174 F.3d 1271, 1283 (11th Cir. 1999).

However, even if an officer arrests an individual without probable cause in violation of the Constitution, this does not automatically strip the officer of qualified immunity protection: "We do not automatically hold an officer liable for making an arrest that, when seen with the benefit of hindsight, turns out not to have been supported by probable cause." Skop, 485 F.3d at 1137; *see also* Anderson, 483 U.S. at 641,107 S. Ct. 3034. "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." Id.

In wrongful arrest cases, the "clearly established" prong is frequently framed as an "arguable probable cause" inquiry. "[T]he court applies the standard of "arguable probable cause", that is, whether 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[s] could have believed that probable cause existed to arrest.' " Id. In other words, when an officer violates the Constitution because he lacked probable cause to make an arrest, the officer's conduct may still be insulated under the second prong of qualified immunity if he had "arguable probable cause" to make the arrest. Case v. Eslinger, 555 F.3d 1317, 1327 (11th Cir. 2009); *see also* Draper v. Reynolds, 369 F.3d 1270 (11th Cir. 2004)("Given our conclusion that [defendant] had actual probable cause and no constitutional violation occurred, we need not discuss the arguable probable cause doctrine...for purposes of determining the second prong of the qualified immunity test."); Scarbrough v. Myles, 245 F.3d 1299, 1303 (11th

Cir. 2001) ("Because [defendant] had arguable probable cause to arrest [plaintiff], he violated no clearly established law."); <u>Post v. City of Fort Lauderdale</u>, 7 F.3d 1552, 1559 (11th Cir. 1993).

"[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." <u>Case</u>, 555 F.3d at 1327 (*citing* <u>Illinois v. Gates</u>, 462 U.S. 213, 245 n. 13 (1983). "Probable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information'." <u>id.</u>, *quoting* <u>Ortega v. Christian</u>, 85 F.3d 1521, 1525 (11th Cir. 1996) (*quoting* <u>Marx v. Gumbinner</u>, 905 F.2d 1503, 1506 (11th Cir. l990). Probable cause must be assessed "not with clinical detachment but with a common sense view to the realities of normal life." <u>Id.</u>, *quoting* <u>Wilson v. Attawa</u>, 757 F.2d 1227, 1235 (11th Cir. l985). The probable cause determination is an objective one. <u>Id.</u>, *citing* <u>Lee</u>, 284 F.3d at 1188; <u>Rankin v. Evans</u>, 133 F.3d 1425, 133 (11th Cir. 1998). "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition ..." <u>Id.</u>, *quoting* <u>Saucier</u> , 533 U.S. at 201. The key element in "arguable probable cause" is what information the officer knew or had at the time of the arrest to warrant a prudent person to believe that the suspect had committed an offense. <u>Gerstein v. Pugh</u>, 420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); <u>Rankin v. Evans</u>, 133 F.3d 1425, 1435 (11th Cir.1998).

The constitutional violations alleged by the plaintiff in her complaint involve two closely related claims which arise from her arrest - - a claim for unreasonable arrest and a claim for violation of due process. Plaintiff's unreasonable arrest claim is founded on the United States Constitution's Fourth Amendment prohibition against "unreasonable

searches and seizures," and "an arrest is a seizure of the person."   <u>Skop</u>, 485 F.3d at

1137; <u>Case</u>, 555 F.3d at 1326.   A seizure is unreasonable only if carried out in the

absence of probable cause.  *Id*.  Plaintiff's due process claim is founded on the Fourteenth

Amendment protection against deprivation of liberty without due process of law.  An

incarceration subsequent to arrest is a deprivation of liberty without due process of law

only when the arrest was made in the absence of probable cause.  <u>Case</u>, 555 F.3d at 1330.

The critical question relative to both of plaintiff's claims is the existence, or lack

thereof, of actual or arguable probable cause to arrest the Plaintiff.  Although not entirely

clear, the gist of plaintiff's argument is that plaintiff's arrest was invalid because: (1) the

time frame does not support a valid arrest[8];  (2) there were inconsistencies in the

statements made by Officers Blanks and Walker[9]; and (3) "Mrs. Dixon was arrested

---

[8] Plaintiff appears to contend that the arrest was invalid because the actual charge under Title 13 of the Alabama Code was not determined until the arresting officer discussed the matter with his supervisors after plaintiff was transported to jail in handcuffs.  (Doc. 39 at 10-11)

[9] Plaintiff sets forth a number of statements she perceives to be inconsistent, such as Officer Walker's statement that a handgun was located in the pillow of the sofa on the trailer while Officer Blanks testified that it was under the sofa on the trailer.  Opposition Brief (Doc. 39) at 11.  Plaintiff also sets forth statements from the respective affidavits of Officer Walker and Officer Blanks under a category entitled "Inconsistent Statements Walker [sic] Nature of the Offense and Time of Occurrence," *id.* at 12, but the undersigned finds no valid argument within this discussion.  Another alleged inconsistency involved Officer Walker's statement that, after the traffic stop, he instructed all subjects to exit the van versus Officer Blanks' statement that all subjects were removed from the van.  *Id*. at 13-14. Another alleged inconsistency involved Officer Walker's statement that the detainees were asked at the scene if they had permits to carry the handguns and none of them said they had a valid permit versus Officer Blanks' statement that, after the detainees were brought to the jail, he asked Mr. Dixon whether anyone had a pistol permit and Mr. Dixon said no. *Id*. at 14. With respect to the minor child, plaintiff argues that Officer Walker's statement that he believed the child was put in danger because of the presence of four guns in the van with the child and eyewitness reports that the Dixon's were driving around town trying to instigate altercations which could have resulted in retaliatory actions is inconsistent with Officer Blanks' statement that it was reckless endangerment to discharge a weapon into a crowd when a five year old child is laying asleep in the back seat of the van (Continued)

15

based on a mere allegation without further developing the basis for reasonable suspicion." (Doc. 39 at 15) None of these grounds has merit and, even if it could be said otherwise, none affects the validity of plaintiff's arrest or calls into question the probable cause abundantly evident in this case.

Plaintiff does not dispute that, during the time she was driving around Selma campaigning, the police received complaints that plaintiff and the other occupants of the van were brandishing weapons and shouting obscenities.[10] Nor does plaintiff dispute that the police received a call at 7:48 p.m. the same day "regarding shots being fired." Id. at 1. Plaintiff does dispute, however, that she and those with her were brandishing weapons or fired any of the guns found in their possession. Id. Plaintiff essentially admits that the basis for the traffic stop of plaintiff's van, and subsequent search which resulted in the discovery of the guns by the police, was the eyewitness reports identifying plaintiff and those with her as the occupants of the vehicle from which the shots were fired. *See* (Doc. 39 at 15) ("Mrs. Dixon was arrested ***on a mere allegation*** without further developing the basis for reasonable suspicion.") (emphasis added). Plaintiff has failed to explain how it could be deemed unreasonable for a police officer to respond to eyewitness reports that

_____

without thinking that someone could fire back and injure the child. *Id*. at 14-15. Plaintiff makes no coherent argument why these purported inconsistencies render the arrest improper.

[10] Plaintiff's sole challenge to the testimony of Officers Walker and Blanks is that "the dispatch log only reflects one call which was made at 7:48 p.m." and her assumption that the complaints reported by the Officers Walker and Blanks went "without any response from [these officers]." Opposition Brief (Doc. 39) at 16. Plaintiff has proffered no evidence that all calls would necessarily have gone through the same system as the 7:48 p.m. call regarding a shot fired or that there was no response prior to that call. However, even if plaintiff's present contention is accepted as the requisite evidence, the undisputed fact concerning the 7:48 p.m. call regarding a shot fired and the events which transpired thereafter remain a valid basis for plaintiff's arrest.

shots were fired from a particular vehicle in which particular people are identified by stopping that vehicle and subsequently arresting those identified individuals after guns are discovered not only in proximity to the occupants but to a five year old child.[11] Based on the record, there existed probable cause to support the officers' actions and they are, therefore, entitled to immunity from any claim for unreasonable arrest or violation of due process. *See* Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (An officer may conduct a stop if he has a reasonable suspicion that criminal activity is afoot.)

(2) *Plaintiff has failed to state a viable claim against the City of Selma.*

As illustrated above, the record before the court reflects that the defendant police officers had sufficient probable cause to arrest the plaintiff. Consequently, plaintiff's constitutional rights under the Fourth and Fourteenth Amendment of the United States Constitution were not violated and neither the City of Selma nor the individual defendants are liable in any manner to the plaintiff.

Even assuming that a constitutional deprivation had occurred, plaintiff has failed to proffer any evidence that a policy or a custom of the City of Selma was the moving force behind such a constitutional deprivation, a requisite to the imposition of any municipal liability under 42 U.S.C. § 1983. As the Supreme Court made clear in Monell v. Dep't of Social Services of New York, 436 U.S. 658, 691 (1978), there can be

---

[11] Plaintiff also argues that, because "weapons. . . found in the vehicle in and of itself is not a violation of the law" and "Plaintiff's minor child [present] in the vehicle is not a violation of the law in and of itself," there existed no probable cause for an arrest. Opposition Brief (Doc. 39) at 17, 18. The evidence of the record establishes that plaintiff's arrest was not predicated on the mere presence, respectively, of the child or the weapons in the vehicle but, rather, on the totality of events, including the report of a shot fired from plaintiff's vehicle which was clearly identified by eyewitnesses and the location of the weapons in proximity to the child.

no respondeat superior liability for §1983 claims. A municipality is directly liable under §1983 only if the violation of the Plaintiffs rights is attributable to a municipality policy or custom. Id. Consequently, the City of Selma may only be held liable if its own custom or policy inflicts a constitutional injury. Id. ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."); *see also* City of St. Louis v. Praprotnik, 485 U.S. 112, 125 n. 2 (1988)("[M]unicipalities [are] responsible under 1983 only for the execution of official policies and customs, and not for injuries inflicted solely by employees or agents."); Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986)("The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipality liability is limited to action for which the municipality is actually responsible."). It is, therefore, the burden of the plaintiff to specifically identify a policy or custom of the City of Selma which caused her alleged injury. *See* McDowell v. Brown, 392 F. 3d 1283, 1290 (11th Cir. 2004)("This threshold identification of a custom or policy 'ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality'.") (*quoting* Board of County Com'rs v. Brown, 520 U.S. 397, 403-04 (1997)).

In order to show that the municipality, through its deliberate conduct, was the 'moving force' behind an alleged injury, a plaintiff must show not only that the municipal action was taken with the requisite degree of culpability but that a direct causal link exists between the action and the alleged deprivation of federal rights. Brown, 520 U.S. at 404. Thus, in order to impose §1983 liability on the City of Selma, plaintiff must show the

following: "(1) that [her] constitutional rights were violated; (2) that the [City of Selma] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." <u>McDowell</u>, 392 F.3d at 1289 (*citing* <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989)).

As applied to the present case, plaintiff's showing involves nothing more than the following contentions:

1. "In this case, as alleged the policy or custom is not providing due process in regards to her liberty interest to be free from unreasonable arrest and in addition failure to provide adequate notice, or no notice which is in the purview of federal law because minimum procedural requirements are a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action." (Doc. 39 at 20)

2. "The City of Selma had a policy or custom that constituted deliberate indifference to the liberty interest of it's citizenry in an effort to maintain a system of corruption by placing poorly train officers, who acts are condoned and supported by corrupt supervisors, so widespread as to have the force of law." *Id.* at 21.

3. "What is clear that these officers have a deep seated animosity against the Plaintiff, which is supported and condoned by their superiors which were evident in filings in this present action." *Id.* at 23.

Plaintiff's re-allegation of her contention that the individual defendants "did not have actual probable cause, or in the alternative, at least arguable probable cause, to arrest the Plaintiff" does not even purport to implicate the City of Selma. *Id*. at 21. Moreover, Plaintiff's arguments do not make reference to any specific conduct by anyone other than Selma police officers, including Officers Walker and Blanks and their "supervisors, Lieutenant Brock, Sergeant Miller, and Sergeant Billingsley." *Id.* at 21-23.

Plaintiff has failed to make a showing of any custom or policy of the City of Selma which resulted, or even might have result, in the deprivation of a constitutional right. The City of Selma is, therefore, entitled to summary judgment in its favor.

CONCLUSION

For the reasons stated above, it is recommended that defendants' motion for summary judgment be granted and that judgment be entered in favor of each of the defendant, the City of Selma, Jeffery Hardy, Beauty Benjamin, Ray Blanks, Willie Billingsley, Frederick Walker and Scott Swanson, and against the plaintiff, Felicia Owens Dixon, the plaintiff to have and recover nothing of these defendants.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the magistrate judge.

DONE this <u>12th</u> day of November, 2010.

/s/Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

RIGHTS AND RESPONSIBILITIES FOLLOWING
RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

**Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen days[12] of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(c); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988); <u>Nettles v. Wainwright</u>, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc)*.  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a Statement of Objection to Magistrate Judge's Recommendation within [fourteen] days  after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

Transcript (applicable where proceedings tape recorded).  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

**Done** this   12th   day of November, 2010.

/s/ Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE

---

[12] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed.R.Civ.P. 72(b)(2).